on the argument calendar, which is the City of Fernley versus the Director of the Reclamation Bureau. And my understanding is that Mr. Rigdon is going to be arguing for 13 minutes. Ms. Sculon is going to be arguing for 7 minutes, and Mr. McCardle is going to be arguing for 20 minutes. Is that all correct? That's correct, Your Honor. All right. And thank you, Your Honor. We'd like to reserve three minutes of our time for rebuttal. May it please the Court, David Rigdon on behalf of the City of Fernley. The primary issue in this appeal is really simple. Do cities have standing under NEPA to protect community water supplies? After all, water is fundamental to life, and it's a basic human need. Counsel, let me just get you to the part of the case that, to me, is the heart of the matter. We have case law in this circuit, whether right or wrong, that says that a purely economic interest is not protectable under NEPA. But as I understand it, there was no opportunity to amend the pleading to allege additionally qualitative issues that affect what would be traditionally considered environmental interests. What would be the allegations if you were permitted to amend the complaint? So that, your understanding is correct, Your Honor, that there was no leave to amend granted in this case. We believe that we did it in our original complaint. We believe it was sufficient, and it sufficiently alleged environmental harm. But there were two additional environmental harms that we didn't specifically mention in our complaint because they were related to environmental issues. One was due to the environmental harms we did allege in our complaint, and that was land subsidence as a result of when groundwater levels decline, land has a tendency to settle, and that can do damage, tremendous environmental damage. And the second was loss of water to free-adaptive plants that feed off of that groundwater as the water level declined. Those two allegations, the district court in the oral argument before the district court asked reclamation if those were actually included in the complaint, would that meet NEPA's standing requirement? And the answer was an unequivocal yes, that that would. Despite that, the district court did not deny us leave to amend because it misunderstood, and this goes back to our original point, it misunderstood this court's case law regarding the standing of municipalities to assert harms to community water supplies. The district court viewed harms to community water supplies as a purely economic harm. But that's completely opposite of what this court's precedent in City of Davis and Churchill County say. And the district court relied in its order denying leave to amend, the district court made specific reference to a case called Duval Ranching, which is a district court case, not a circuit court case, in which you had purely private actors. And the judge in that case specifically said these actors here, these plaintiffs, are private entities, exactly what their name, Duval Ranching Company, implies. That they're private businesses with a purely economic motive. That's what the district court relied on, and the district court ignored this court's City of Davis and Churchill County precedents, which say that cities are different. Cities have an environmental interest in the resources from which they source their water supplies, and that is a protectable interest under NEPA. And that's why we assert that we didn't necessarily need to amend our complaint. Our complaint was sufficient because it alleged harm to those community water supplies. And that's the fundamental error that we believe that the district court made in this case. One of the, the notion that a city's water supply is not something that NEPA is intended to protect is just antithetical to case law for multiple circuits. And to pretty much everyone's understanding of what NEPA is there for. Even the United States Supreme Court has said that NEPA is there to protect life, excuse me, to protect air, land, and water, which supports life. Well, in the desert, more firmly is, groundwater aquifers are necessary to support life. And we, in our complaint, there's at least a dozen instances in our complaint, at a minimum of dozen. Where we allege that the dropping of the groundwater, the harm that the city is alleging is the dropping of the groundwater levels and the impacts to the groundwater aquifer and to groundwater resources. So we don't have a purely economic motive here. And in fact, this court has said that NEPA, especially, and this is from the city of Davis case, expressly contemplates the state and local governments are to play an important role in the effectuation of national environmental policy. Counsel, this is unrelated to what you're talking about now. And I'm going to ask your friend this. My understanding is the construction is ongoing. Is that right? That's correct. And do you know what stage it's at right now? Well, let me clarify that. So the record of decision in this case and what the EIS evaluated was a lining of the full 12 miles of the canal through the city. The Bureau has elected to only go move forward with what's called phase one, which is a lining of 3.1 miles. So it's not lining the whole canal. My understanding is that that project is ongoing. And it started at the end of last year? It started. Yes, it started at the end of last year. They dewatered the canal and they're in there right now working on, is my understanding. I don't know whether the next phase is going to be called phase two. But where is, to your knowledge, and again, I'll ask your friend this, what right now is going on with phase two? To my knowledge, phase two is not even contemplated at this point. Thank you. There's no mootness issue here, it sounds like. No, there's no mootness issue here. In order to, so when Reclamation constructs a project, they're required to enter into a repayment contract with the local irrigation district. They've entered into that repayment contract, and my understanding is all they could afford was 3.1 miles. And so that's why there's no contemplated phase two. Thank you. So one other thing that we think is vitally important here is Reclamation throughout this EIS process, or at the beginning of this EIS process, invited Fernley to be a cooperating agency. That status is not available to purely economic actors. That status is only available to state, local, tribal, and federal agencies. And that status indicates that Reclamation saw at that point that we had certain protectable environmental interests that needed to be addressed throughout this process that necessitated us being a cooperating agency. It's kind of illogical to now have Reclamation come in and say, yeah, we invited you to be a cooperating agency, we recognize that you have environmental interest to protect here. And yet, at the same time, now you don't have standing under NEPA because you don't have any environmental interest to protect. Council, this also perhaps doesn't directly address your issues, but am I correct factually that if you were somehow deemed to be in, that the water that you claim, if this project were to go forward, essentially that would end up with the tribe if it didn't go to you? Is that right? Or is that a disputed kind of fact? I think that's a disputed fact. I don't think anybody has a good understanding of where that water would go. I'm certain the tribe would say that, would take that position, but I think the Irrigation District might take a different position. Just to address a couple of Reclamation's arguments, and this is where the City of Fernley is in exactly the same position as the City of Davis was when you heard that case. We have the same rights and we have the same obligations to protect environmental resources. The Nevada Supreme Court in the case of Serpa versus Washington County, and this gets to their argument that the Nevada State Engineer has this exclusive jurisdiction over water resources in the state. The Nevada Supreme Court in the Serpa case said that Nevada statutes, just like California statutes, direct local governments to quote, maintain the quality of our natural resources and to protect the public health. We have a mandate under law to protect the natural resources within our jurisdiction. And the Supreme Court went further and said, that includes the ability to regulate concurrently with the State Engineer, to regulate and make determinations with regards to water availability. So I don't think there's any, there can be any real dispute here that cities in Nevada have a jurisdiction to protect and an obligation to protect water and other natural resources that their citizens rely on. Just to, real quickly, there's two other claims. There's the declarative relief claim and the nuisance claim. Just real quick, we pled those under the jurisdiction of the APA and federal question jurisdiction. We did not plead those under- Didn't the district court ask you directly, with respect to your declaratory judgment claim, what basis you were seeking in a federal court jurisdiction? And the district court's ruling includes a footnote that says, when asked specifically whether or not, because the complaint was not clear, apparently, to the district court in what you were alleging, in terms of whether there was original federal question jurisdiction or supplemental jurisdiction, the city conceded that, in fact, it was only seeking jurisdiction under a supplemental jurisdiction theory and not an original jurisdiction. I believe that's not correct. And it's very clear from our complaint. There is no mention of 1367 anywhere in our complaint. You won't find it. There is mention in our jurisdictional section of our complaint of Section 702 of APA and 28 U.S.C. 1331 federal question. So there really is no question as to what we actually pled in our complaint. What final agency action is there that is challengeable under the APA? That's the issuance of the record of decision that adopts the final environmental impact statement. And that's not disputed that that's a final agency action. So with that, I'd like to reserve the rest of my time for rebuttal. All right. Thank you. Good morning. May it please the court. My name is Katelyn Skulon from Schroeder Law Offices, and I represent David Sticks, Jr. and Dina Edmondson, who are the plaintiff intervenors in this case. I'm also joined by Mr. Sticks today. The Sticks parties entered this case, like I said, as plaintiff intervenors joining in the city of Burnley's first three claims as they related to violations of NEPA, the APA, and the declaratory relief claim. Given that the underlying claims and arguments are substantially overlapping, I'd like to just focus on some nuances applying to Sticks as it relates to NEPA and the standing issue. So the court made a determination to dismiss this claim on prudential standing under NEPA. And the question of whether a municipality has standing under NEPA is different than whether individuals like the Sticks parties have standing under NEPA. In this court, in the Navajo Nation versus Department of Interior, this court held that NEPA's standing is quite broad and includes both birdwatchers and outdoorsmen and their ability to enjoy a certain area. In their initial complaint, similar to the city, the Sticks outlined facts regarding the basin, facts regarding the inflows to the basin, including the Truckee Canal, as well as concerns that the record of decision and the EIS looking at the basin and looking at the canal seepage didn't really look at the impacts to the aquifer and what effects that would have. We think that that was sufficient, similar to the city, to provide us with standing under NEPA. However, the district court did not agree. The district court, as you guys have noted, went one step further denying an opportunity to amend. And this is something that we don't agree with, having asked the court to allow us to amend to further outline. Is it your view that anyone, and maybe I'm going to use the wrong word here if I do, I apologize, that any adjacent owner who is in any way benefiting from the recharge has standing under NEPA? No, that's not... So how is your client different than somebody who's just saying, I take this water, I use it, and I'm not going to have it if the lining is built? So the STIC's interests as individuals are much broader than just the use of the water. Certainly the use of the water is outlined in the complaint, especially related to that declaratory relief claim and the right of recharge. But as it applies to NEPA, the concerns are more global in terms of being concerned with not only the dropping of the water level, but the environmental effects resulting from that. So in the proposed amended complaint and intervention that was submitted to the district court with the FRCP 59 filings, the STIC's parties outlined a number of more traditional NEPA considerations. There were those aesthetic and recreational concerns. They bike ride, they walk, they horseback ride, they hunt in that area, similar to those bird watcher or outdoorsman interests in the Navajo case. Additionally, they outlined certain environmental and ecological management concerns. Dust abatement was one, as Mr. Rigdon mentioned. We're in the Great Basin Desert, so water and limited water resources available in that dry and arid climate is very important. The STIC's parties also outlined fire suppression concerns and fire management concerns. The city of Fernley and just that general northern Nevada area is wrought with wildfire during the wildfire season. And having not only access to water, but those phreatophytic plants and more greenery allows not only the farmers, but just the community in general to manage those fire dangers and allow that fire danger to stop from spreading. So those interests were additionally outlined. They also just had some general environmental interests related to the health of the plants and the health of the ecosystem as a whole. There's a wetland associated with that basin and just their use and enjoyment of not only their private land, but other lands surrounding the area. And similar to the city of Fernley and denying amendment, the STIC's parties were compared to the plaintiffs in the Duval Ranching case. And as Mr. Rigdon pointed out, it's not analogous. The Duval Ranching plaintiffs were ranching companies. That court pointed out that those entities were purely created for an economic purpose. And the STIC's are people. They have those varying and vast different interests. And so we don't think it's the holding that we want to see in this district that an individual who may have an economic interest associated with an issue is precluded from also having an environmental interest. Human beings are, you know, we have lots of different interests. We live in places for lots of different reasons. And we can have an interest in being able to draw water from a well, but also have an interest in wanting to see that ecological and water-dependent environment thrive. So I'd like to reserve my time for rebuttal. Only one of you is going to get rebuttal. Oh, okay. Well, you should use your time. Okay. Um, I also would like to point out that in the Supreme Court, the Summers versus Earth Island Institute case upheld standing related to merely aesthetic and recreational interests. And we've gone beyond that, alleging those certain interests related to the environmental use of the property, as well as those environmental management. And I've actually, that's, I will conclude my argument and allow Mr. Rigdon to utilize that extra time. Thank you. Thank you. Good morning. May it please the Court. I'm Kevin McCardle on behalf of the Bureau of Reclamation. I'd just like to mention that Chris Mixon on behalf of the Pyramid Lake Bayou Tribe is also present, but the tribe has elected not to use any time for oral argument. I'm going to start with the Court's permission with the NEPA claim. And the basic problem is this. The City's interest in taking seepage water for purposes that are unrelated to the protection of the environment is not an interest that's protected by NEPA. Council, what is wrong with permitting the City and the intervenors to amend their complaints to add the kinds of environmental interests that are traditional environmental interests that would appear to give them standing under our case law? Well, Your Honor, presumably if the plaintiffs were experiencing these environmental injuries that might give them standing under NEPA, they would have brought that to the Court's attention during the seven months that the motion to dismiss was pending. Well, Council, we also have case law saying that it's almost invariable that parties are given an opportunity to amend. And other than the fact that they were late to the party, is there any principled reason to deny them an opportunity to amend? Well, I think that the late to the party point is pretty significant, especially from District Court's plural perspective, because the motion was filed in May. The argument was in December. And the Court addressed everything that they presented in terms of purported environmental harms. I'm sorry. I was going to say, do you today agree that if the proposed amendments were made to deal with things like phreatophytes and dust and other traditionally environmental concerns, do you today deny that they would have standing? We'd have to take a look at the specific allegations. But the allegations in the proposed amended complaints that were submitted for the first time after judgment just contain general allegations of environmental harm that, as the Third Circuit noted in that Maiden Creek case that we cited, they're just fortuitously related to the plaintiff. Council, we have cases in this circuit that say that if a plaintiff has both environmental and economic concerns, the environmental concerns suffice for standing and the economic concerns don't negate that. So, again, why shouldn't they be allowed to amend? Well, they had an opportunity to amend during the seven months that the motion was pending. I mean, they're represented by Council. Parties routinely move to amend when we filed a motion to dismiss saying that they had an alleged environmental injury. So, Council, one of the reasons I was asking your friend, and I realize this wasn't in the record, about what's sort of going on with the project was my concern about the late to the party. So, Council has said that, to their knowledge, this Phase 1, 3.2 miles is done and nothing right now is in S with regard to what would presumably be named Phase 2. Can you give me the government's view of what's going on? I think Mr. Ring was largely correct, but just to correct a statement from your Honor, construction's underway. Okay, so it's underway on Phase 1. It's not, the 3.2 is not done yet. It's scheduled to be completed by September 30th. Of this year. Right. Okay, and is it correct that right now for the putative Phase 2, we don't know if, when, how much, et cetera? That's correct. My understanding is that, as Mr. Regan suggested, there was not enough money to go beyond Phase 1 and the repayment of the Phase 1 costs will take up to 50 years. So, Phase 2, if it ever occurs, is a long ways away.  What is the prejudice to the government of allowing amendment? Well, I think the prejudice is just... You don't want to have to decide on the merit. You don't want the court to decide on the merits, which is, of course, always the party's interest. But in terms of prejudice on the ground, sorry for the bad pun, the real world, what prejudice is there? Well, just to be clear, we're not afraid of defending on the merits because, in our view, we analyzed the impacts of a reduction seepage. But I think it's just a matter of principle. We filed a motion to dismiss. They had seven months to decide to amend. Presumably, if they were suffering all these injuries you just heard, it might have occurred to them to bring those to the court's attention. The court considered everything that they said and it entered judgment. And under Lindauer and the Benson case cited in our brief, the court could not have granted leave to amend unless it first vacated the judgment. And the district court said, I don't see any reason to vacate the judgment because all of the arguments that they raised could have been raised earlier. And nobody has suggested that that was an abuse of discretion. So under this court's binding precedent, the district court could not have granted leave to amend. Again, nobody has challenged the ruling that there was no basis for reopening the judgment because all of the arguments were already presented. I wanted to ask you with respect to the allegations under the APA claim. In your view, is there a final agency action? No. And here we have to unpack the different claims. The first claim is the claim that's actually pled where they just seek a freestanding declaration that they have a state law water right.  Doesn't say that some action was arbitrary and capricious. It's just a freestanding request for a declaratory judgment. So the claim that's pled doesn't challenge final agency action. We could stop there. Now, on appeal, the city says, well, we actually also argued that Reclamation didn't have authority to respond to our letter claiming that we had a state law water right. Do you argue waiver on appeal? Yes, well, we argued that they can't amend their complaint through arguments on appeal. I think it's essentially the same point. The way I read your brief, you're addressing the merits of their argument and don't say, I mean, I'll tell you, I looked at the footnote in the district court's ruling on the motion to dismiss footnote 13 that says pretty clearly that her view was that the city was only seeking to raise a declaratory judgment claim under a supplemental jurisdiction theory and not under an original jurisdiction theory. But my question to you is, I also don't see in your brief that you allege a waiver. Well, we argue that it had to be that because it's not cognizable under the APA. It's essentially the same result. Well, it's a different argument, though. Judge Desai is asking you whether you argued specifically that we lacked jurisdiction to consider it because it was, or lacked the authority because it was waived versus saying there's no final agency action. Those are two different animals. Right. No, we argued, we didn't make the argument that they're precluded from claiming that the claim they pled arises under the APA. But it doesn't. And the district court also properly declined to exercise supplemental jurisdiction over the claim. And now getting to the alternative claim that was argued for the first time on appeal that this is a claim that they're actually challenging Reclamation's ultra-virous determination that they don't have a state law water right claim. The comment was made, well, that challenge is a final agency action, the ROT. The ROT is a final agency action for NEPA purposes. But there was just a bigger half a sentence in passing about this issue. It wasn't the agency's holding. Exactly. And in determining finality, you have to look at the claim that's being pled. Imagine, for instance, that the only claim was this ultra-virous claim. There would be no final agency action with respect to that claim because everybody agrees that Reclamation doesn't have the authority to issue a binding determination as to the state's clause claim. So even if you're willing to engage on the claim that's not pled in the complaint and raised for the first time on appeal, that also would not challenge final agency action on that basis alone. The district court lacked jurisdiction. Unless the court has any further questions, we're prepared to rest on our brief. No. No. Remaining arguments. Thank you very much. The district court's decision should be affirmed. All right, counsel, you have some time for rebuttal. We'll put three minutes on the clock. Thank you, Your Honor. Just to hit on a couple of points that were brought up. First of all, that last point about final agency action. Remember, an agency action is, and you mentioned that it's just a few sentences in the EIS, but the definition of an agency action is a whole or any part of an agency determination. So that's a part of the agency determination, even if it's a small part. And we alleged that the whole purpose for them doing that was to avoid the hard look analysis that they were required to do of the impacts to the groundwater. So we were denied a procedural right to have them look at the impacts of the groundwater because they made that determination. So it was a final determination and it did affect the rights of the parties. With regards to, let's see here. So just to expand on something else with regards to leave to amend. We, if we believe our complaints is sufficiently pled, he mentions that, well, there was seven months from when we filed our motion to dismiss that she had an opportunity to file a motion for leave to amend. Well, if we believe that our complaint is pled, which we still believe and assert today, that our complaint has pled alleged environmental harms, then we shouldn't be required to file a motion for leave to amend before we've had that determination made. That would be illogical. We have a right to have that determine whether our existing complaint was sufficient. And then if the court finds some technical error with that, then get leave to amend after that and ask for it after that. And that's exactly what we asked for. That's exactly what we mentioned in both our opposition to the motion to dismiss and in oral argument. So, and by the way, the court did not deny leave to amend because of our failure to raise it. It said your allegations were futile. Exactly. And so that the court considered it as a legitimate request for leave to amend and denied it based upon futility, which we allege was incorrectly decided because of that fundamental error about our interests. So, I also want to just clarify something because I mentioned that it was undisputed that the record of decision is a final agency action. I was referring to the APA and the NEPA claim that it's a final agency action for that purpose. They do dispute that with regard to our declarative relief claim that it was. So, I just want to make that clear that I was only saying it was undisputed for the purposes of the NEPA claim. And finally, with regards to your question about the repayment contract, you may also want to know, I don't know that it's germane to the issue at hand, but the repayment contract is actually being litigated as being invalid as well. So, that's in state court in Nevada. So, I'll just wrap up by saying that, again, Fernley is in no different position here than Churchill County was, than the city of Davis was. We have a right and an obligation to bring a NEPA claim when community water supplies are at issue. Thank you. Thank you. We thank counsel for their arguments and the case just argued is submitted and we are adjourned for the day. All rise.
judges: GRABER, BENNETT, DESAI